**BERG DEVELOPMENT CO., Appellant,**

**· v.**

**CITY OF MISSOURI CITY, Appellee.**

**No. A2380.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

July 9, 1980.

Rehearing Denied July 30, 1980.

B. Edward Williamson, Houston, for appellant.

William A. Olson, Jr., Olson & Olson, Houston, for appellee.

PAUL PRESSLER, Justice.

Appellants sought a Summary Judgment declaring appellee's Park Dedication Ordinance unconstitutional and appeals from its denial. We reverse and render.

Appellant is a real estate subdivider and developer with a project known as Meadowcreek, Section V located within appellee's city limits. Appellant was informed that its plat for this section would be approved upon compliance with the provisions of the Park Dedication Ordinance, No. 0–77–28. Missouri City is a home rule city, operating under a·Charter adopted pursuant to Tex. Const. art. XI, § 5. On March 18, 1974, appellee adopted a comprehensive subdivi-

sion ordinance promulgating general rules and regulations governing plats and the subdivision of realty. This ordinance is authorized by Section 2.02 of appellee's Home Rule Charter and Tex.Rev.Civ.Stat.Ann. art. 974a (Vernon 1963). The Park Dedication Ordinance (hereinafter referred to as "the ordinance") was adopted in December 1977 as an amendment to such ordinance. It states in part:

    5.  The developer of a residential subdivision shall dedicate a site or sites within such subdivision to the City of Missouri City, Texas, for public park purposes at a location or locations and configuration approved by the Parks and Recreation Director and the City of Missouri City Planning Commission.

    a.  The amount of land to be dedicated for public park purposes shall be calculated on the basis of one-half acre of park land for every 150 persons in a residential subdivision. The number of persons in a residential subdivision shall be determined at the rate of 3.5 persons per single-family residential lot or 2.4 persons per multi-family living unit. In making such calculation, the number of multi-family living units shall be the maximum number allowed by the ordinances of the City of Missouri City, Texas.

.    .    .    .    .

    b.  The City Council of the City of Missouri City in its discretion may elect to accept money in lieu of the dedication of park land. The amount of money in lieu of the dedication of park land shall be the fair market value of the acreage that would otherwise be required to be dedicated. The fair market value of such acreage shall be equal to its ratio to the fair market value of the unimproved land within the entire subdivision. All money received in lieu of the dedication of park land shall be used exclusively for the purchase, improvement, or maintenance of public parks within the City of Missouri City.

Appellant refused compliance and brought this action. Appellee notified appellant that it elected to receive money in lieu of the property as permitted by the ordinance. The fair market value of the land to be dedicated was calculated by appellee to be $22,462.50. In order to mitigate any damages, the parties entered into an Escrow Agreement whereby the sum requested in lieu of realty was deposited with an escrow agent in exchange for plat approval. Motions for Summary Judgment were submitted to the trial court accompanied by appropriate affidavits. The trial court overruled appellant's motion and granted appellee's.

Appellant contends it was error for the trial court to overrule appellant's Motion for Summary Judgment and to grant appellee's Motion for Summary Judgment because it was established as a matter of law that the ordinance is in violation of Tex. Const. art. I, § 17 and U.S.Const. Amend. V and XIV and that the appellee exceeded its statutory powers as a municipality in enacting the ordinance.

Although the exact question in this case is one of first impression in the State of Texas, the question of the balance between government control and the exercise of personal property rights has required constant examination.

    ■  The ordinance clearly permits the city to appropriate realty without compensation. Further, it permits the city to require the payment of the fair market value of the realty in cash rather than the dedication of the realty itself. There is no requirement in the ordinance that such cash be expended to purchase new park areas or that any such areas purchased be located in or near the subdivision. There is also no time limit as to when the funds must be used. Therefore, the ordinance places a special economic burden ultimately upon the purchasers of homes and lots within the subdivision with no guarantee that the recreational facilities for which they have paid will be soon obtained or located close to their subdivision.

Tex.Const. art. 1 § 17 states in part:

No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . .

Appellee, in response, contends that this ordinance is a valid exercise of its "police powers," is not "arbitrary" or "unreasonable," and bears a "substantial relation to the public health, safety, morals, or general welfare" as required by *Lombardo v. City of Dallas*, 124 Tex. 1, 73 S.W.2d 475 (1934).

The Texas Supreme Court, in *City of Austin v. Teague*, 570 S.W.2d 389 (Tex. 1978), reviewed the various tests for determining the powers of cities and reiterated and reaffirmed the general principle it had set down in *DePuy v. City of Waco*, 396 S.W.2d 103, 107 (Tex.1965), stating:

We held that a government's correction of something that is a "detriment to the public" or a mere "regulation" indicates that compensation should not be allowed. DuPuy stated, on the other hand, that proof of a "taking," or of property loss to the owner "not common to the general public," indicates that the government should pay for the owner's loss.

*Supra* at 392.

■ It is beyond question that the ordinance before us involves a "taking, or . . property loss to the owner not common to the general public" and, therefore, cannot be accomplished without compensation to the property owner. This is particularly evident when the provision of the ordinance which permits appellee to receive funds in lieu of realty is considered. Clearly, with this provision, there is no room for the contention that appellee is merely regulating the use of appellant's realty. Appellant's realty is no longer involved once the city exercises this option. Consequently, we hold that the Parks Dedication Ordinance is void, being violative of appellant's constitutional rights under Tex.Const. art. 1, § 17.

We do not hold that the ordinance would be constitutional if the "cash in lieu of realty" provision were deleted. It is our opinion that it would not. To permit municipalities and other governmental entities further to extend their encroachment over private property rights in this way under the guise of protecting the public's safety, health, and general welfare, makes a mockery of the spirit as well as the letter of our Constitution. As stated by our Supreme Court:

The demands of progress are inexorable and public improvements should not be discouraged; but just as compelling is the principle that private property rights are to be protected with all citizens sharing equally in the cost of progress. It was said in *Brewster v. City of Forney*, 233 S.W. 175 (Tex.Com.App.1920)

The Constitution of Texas and the decisions of her courts reveal a zealous regard for the rights of the individual citizen.

*DuPuy v. Waco, supra* at 106.

■ While government can clearly require the dedication of watermains and sewers as well as property for streets and alleys, we believe these to be distinguishable from the dedication of property for recreational purposes. The former bears a substantial relation to the safety and health of the community while the latter does not.

■ Land can be properly acquired for recreational purposes by a city by means of "gift, devise, or purchase or by condemnation proceedings" as provided by Tex.Rev. Civ.Stat.Ann. art. 6081e (Vernon 1970). This statute evidences the position of the legislature that appropriation is not a proper means of acquisition, as such means is inconsistent with, and mutually exclusive of, eminent domain, one of the means enumerated in the statute.

We are not unmindful of cases from other jurisdictions cited by appellee which support its position. We believe, however, that the Texas Constitution and its interpretation by our Supreme Court, reflects the highest regard for personal property rights. This decision is consistent with such authority.

Reversed and rendered.