**CITY OF COLLEGE STATION, Petitioner,**

v.

**TURTLE ROCK CORPORATION, Respondent.**

No. C–2918.

Supreme Court of Texas.

Nov. 21, 1984.

Lowell F. Denton, City Atty., Neeley C. Lewis, Asst. City Atty., College Station, for petitioner.

Lawrence, Thornton, Payne, Watson & Kling, Bill Payne, Bryan, for respondent.

ROBERTSON, Justice.

This is a suit for declaratory judgment brought by Turtle Rock Corporation, a real estate developer, challenging the constitutionality and validity of the City of College Station's ordinance requiring park land dedication or money in lieu thereof as a condition to subdivision plat approval.

The trial court granted summary judgment for Turtle Rock. The court of appeals affirmed, holding that College Station's ordinance was a "taking" without compensation in violation of TEX. CONST. art. 1 § 17 and that it violated TEX.REV. CIV.STAT.ANN. art. 6081e and art. 1175. 666 S.W.2d 318. We reverse the judgments of the courts below and remand this cause to the trial court.

College Station is a home rule city, and Turtle Rock Corporation is a real estate development corporation with a project located within the city limits. At issue is College Station's Ordinance No. 1265, the park land dedication ordinance. The stated purpose of this ordinance is "to provide recreational areas in the form of neighborhood parks as a function of subdivision

development ...." Basically, the ordinance requires, as a condition precedent to subdivision plat approval, that the developer dedicate land to the city for park purposes. The ordinance contains provisions to the following effect:

(1) that a developer must grant to the city a fee simple dedication of one acre of land for each 133 proposed dwelling units;

(2) that a developer must pay cash in lieu of land if fewer than 133 units are proposed;

(3) that the city may decide whether to accept the dedication or to require cash payment if between one and five acres of land are to be dedicated;

(4) that the developer may elect to pay cash, subject to a city council veto, in lieu of any dedication required.

The ordinance further requires that the city establish a special fund for the deposit of all sums paid in lieu of land dedication. These sums must be expended within two years for the acquisition or development of a neighborhood park; otherwise the owners of property in the subdivision are entitled to a refund.

Turtle Rock elected to pay $34,200.00 in lieu of dedicating the required amount of land. Upon agreement between the parties, this amount was placed in an escrow fund, pending the resolution of this lawsuit.

## CONSTITUTIONAL CHALLENGE

■ The Texas Constitution, article 1, section 17 requires that adequate compensation be paid when private property is taken for public use. However, all property is held subject to the valid exercise of the police power. *Lombardo v. City of Dallas*, 124 Tex. 1, 73 S.W.2d 475, 478 (1934). A city is not required to make compensation for losses occasioned by the proper and reasonable exercise of its police power. *Lombardo*, 73 S.W.2d at 479; *Edge v. City of Bellaire*, 200 S.W.2d 224, 226 (Tex.Civ.App.—Galveston 1947, writ ref'd).

■ Recognizing the illusory nature of the problem, we have previously refused to establish a bright line for distinguishing between an exercise of the police power which does constitute a taking and one which does not. *City of Austin v. Teague*, 570 S.W.2d 389, 391 (Tex.1978); *DuPuy v. City of Waco*, 396 S.W.2d 103, 107 (Tex. 1965). Instead, the cases demonstrate that a careful analysis of the facts is necessary in each case of this kind.

There is ... no one test and no single sentence rule .... The need to adjust the conflicts between private ownership of property and the public's interests is a very old one which has produced no single solution.

*Teague*, 570 S.W.2d at 392. *See also Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387–388, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926). The question of whether a police power regulation is proper or whether it constitutes a compensable taking is a question of law and not of fact. *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex.1971); *Dupuy*, 396 S.W.2d at 110; *City of Bellaire v. Lamkin*, 159 Tex. 141, 317 S.W.2d 43, 45 (1958); *City of Waxahachie v. Watkins*, 154 Tex. 206, 275 S.W.2d 477, 481 (1955). Nevertheless, we have held that the court must consider all of the circumstances. *Hunt*, 462 S.W.2d at 539; *Lamkin*, 317 S.W.2d at 45; *Watkins*, 275 S.W.2d at 481; *Edge*, 200 S.W.2d at 227.

The cases provide examples of numerous factors that have proven useful in resolving particular police power questions, but ultimately a fact-sensitive test of reasonableness is required. *See Teague; City of University Park v. Benners*, 485 S.W.2d 773 (Tex.1972), *appeal dismissed* 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191 (1973); *DuPuy; City of San Antonio v. Pigeonhole Parking of Texas*, 158 Tex. 318, 311 S.W.2d 218 (1958).

By contrast, the court of appeals in effect held that all park land dedication ordi-

nances are *per se* invalid. The court stated its holding as follows:

[A] required dedication of land for streets and waterworks clearly 'bears a substantial relation to the safety and health of the community' while a required dedication for park land does not .... We note that parks are not necessarily beneficial to a community or neighborhood.

666 S.W.2d at 321.

The issue in this appeal is not whether parks are always and necessarily a benefit to the community; the issue is whether Turtle Rock met its burden for summary judgment of showing that College Station's ordinance is invalid as a matter of law.

■ A city may enact reasonable regulations to promote the health, safety, and general welfare of its people. *Ellis v. City of West University Place,* 141 Tex. 608, 175 S.W.2d 396 (1943); *Lombardo,* 73 S.W.2d at 478. Thus, in order for this ordinance to be a valid exercise of the city's police power, not constituting a taking, there are two related requirements. First, the regulation must be adopted to accomplish a legitimate goal; it must be "substantially related" to the health, safety, or general welfare of the people. *Watkins,* 275 S.W.2d at 481; *Lombardo,* 73 S.W.2d at 479. Second, the regulation must be reasonable; it cannot be arbitrary. *Benners,* 485 S.W.2d at 778; *Lombardo,* 73 S.W.2d at 479.

■ The presumption favors the reasonableness and validity of the ordinance. An "extraordinary burden" rests on one attacking a city ordinance. *Hunt,* 462 S.W.2d at 539.

■ The concept of the public welfare has a broad range. *Berman v. Parker,* 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954).

If reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the public health, safety, morals, or general welfare ... the ordinance must stand as a valid exercise of the city's policy power.

*Hunt,* 462 S.W.2d at 539. Numerous other jurisdictions have upheld park land dedication ordinances as being legitimate exercises of the police power. *See, e.g., Associated Home Builders of the Greater East Bay, Inc. v. City of Walnut Creek,* 4 Cal.3d 633, 94 Cal.Rptr. 630, 484 P.2d 606, *appeal dismissed,* 404 U.S. 878, 92 S.Ct. 202, 30 L.Ed.2d 159 (1971); *Home Builders Ass'n of Greater Kansas City v. City of Kansas City,* 555 S.W.2d 832 (Mo.1977); *Billings Properties, Inc. v. Yellowstone County,* 144 Mont. 25, 394 P.2d 182 (1964); *Jenad, Inc. v. Village of Scarsdale,* 18 N.Y.2d 78, 271 N.Y.S.2d 955, 218 N.E.2d 673 (1966); *Banberry Development Corp. v. South Jordan City,* 631 P.2d 899 (Utah 1981); *Jordan v. Village of Menomonee Falls,* 28 Wis.2d 608, 137 N.W.2d 442 (1965), *appeal dismissed,* 385 U.S. 4, 87 S.Ct. 36, 17 L.Ed.2d 3 (1966). Although we are not bound by these authorities, they are persuasive. We therefore hold that College Station's ordinance is at least one about which reasonable minds might differ. The court of appeals erred in holding that, as a matter of law, a requirement for dedication of park land does not bear a substantial relation to the health, safety, or general welfare of the community.

The court of appeals relied upon the case of *Berg Development Co. v. City of Missouri City,* 603 S.W.2d 273 (Tex.Civ.App.— Houston [14th Dist.] 1980, writ ref'd n.r.e.). However, the Missouri City ordinance did not preclude the city from exacting funds from a developer and then failing to use the money to provide parks for the assessed development. Therefore, that park dedication ordinance placed a special economic burden upon the developer and ultimately upon the home buyers with no guarantee that they would benefit from the exaction. This defect made the Missouri City ordinance arbitrary and therefore unreasonable and unconstitutional.

College Station's ordinance, unlike that of Missouri City, specifically identifies the legitimate goal of providing neighborhood

parks for developments, and it requires that the land or money be used only for that purpose within a reasonable time period.

The ordinance does not permit the city to initiate action that compels a dedication of park land. As long as the land is not developed, the city requires nothing. It is only when a developer chooses to develop land that the city can step in to impose reasonable regulations upon that development.

■ The transfer of title to a small portion of the property does not of itself create a compensable taking. Texas courts have expressly recognized that municipalities can require the "donation" of streets, alleys, water mains, and sewer mains as a condition to subdivision development.

> The overwhelming weight of authority is that such donation is not a taking of … property for public use without reimbursement. The exercise of governmental discretion to impose reasonable regulations as a condition for use of property, or as a condition precedent to the subdivision of land, does not amount to a taking of private property without just compensation.

*Crownhill Homes, Inc. v. City of San Antonio*, 433 S.W.2d 448, 460 (Tex.Civ.App.— Corpus Christi 1968, writ ref'd n.r.e.).

More than fifty years ago, a Detroit developer made a similar argument about a city ordinance requiring dedication of streets as a condition to subdivision plat approval. *Ridgefield Land Co. v. City of Detroit*, 241 Mich. 468, 217 N.W. 58 (1928). He asserted that, of necessity, the street dedication requirement constituted a taking of private property without compensation. The Michigan Supreme Court ruled that the street dedication requirement was a reasonable exercise of the police power. *Id.* Likewise, in a case which emphasized the importance of considering all the circumstances and conditions, the United States Supreme Court made the following observations about the flexibility of the police power:

> Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive.

*Village of Euclid v. Ambler Realty Company*, 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926).

College Station's ordinance requires that only a small portion of a developer's subdivision tract be dedicated to serve park needs. It does not render the developer's entire property "wholly useless" nor does it cause a "total destruction" of the entire tract's economic value. *See Teague*, 570 S.W.2d at 393. It is a regulatory response to the needs created by the developer's use of the land.

■ On its face, this ordinance is not inherently different from other types of municipal land use regulations such as density controls and street dedication requirements. It is possible, of course, that the ordinance may be unduly harsh or create a disproportionate burden in the case of a particular subdivision or developer. We merely hold that College Station's park land dedication ordinance is not unconstitutionally arbitrary or unreasonable on its face.

■ Turtle Rock did not present any summary judgment evidence to show that the ordinance is unreasonable or arbitrary in this particular application; therefore, we remand the cause to the trial court. In making its determination, the court must consider whether there is a reasonable connection between the increased population arising from the subdivision development and the increased park and recreation needs in this neighborhood. The burden

rests on Turtle Rock to demonstrate that there is no such reasonable connection.

■ Both need and benefit must be considered. Without a determination of need, a city could exact land or money to provide a park that was needed long before the developer subdivided his land. Similarly, unless the court considers the benefit, a city could, with monetary exactions, place a park so far from the particular subdivision that the residents received no benefit. *See* Pavelko, *Subdivision Exactions: A Review of Judicial Standards*, 25 Wash.U.J. Urb. & Contemp.L. 269, 289 (1983). The following are examples of the types of evidence which the court may consider: size of lots in the subdivision, the economic impact on the subdivision, the amount of open land consumed by the development.

This type of "reasonable connection" analysis will ensure that the subdivision receives relief from a perceived need, and it will effectively constrain the reach of the municipality. It is consistent with the kind of "reasonableness" analysis required by *DuPuy* and *Teague*, and the presumption of validity is consistent with the approach that Texas courts have traditionally taken when considering the constitutionality of municipal land use ordinances. We also note that this type of analysis has been commonly used in other jurisdictions examining the validity of park land dedication ordinances. See the cases from other jurisdictions cited above.

The position taken by the American Law Institute also supports this type of "reasonable connection" analysis. They recommended that park dedication requirements be utilized and summarized their position as follows:

> The Code adopts the position that developers may be required to provide streets and utilities but only of a quality or quantity reasonably necessary for the proposed development .... Similarly, a developer may be required to provide land or fees for parks or other open space. Again, however, the Code limits the extent of such demands to that reasonably allocable to the development—

measured in terms of the need created by the development.

*Model Land Development Code* § 2–103 at 38 (1976).

### STATUTORY CHALLENGE

The court of appeals also invalidated the College Station ordinance on statutory grounds. The court construed articles 1175 and 6081e, TEX.REV.CIV.STAT. ANN., as "enabling" statutes which limit the proper methods by which Texas cities may obtain park land and which exclude the possibility of a city acquiring parks under its police power.

■ The court's construction of these statutes is at odds with Texas authority on the powers of home rule cities. Home rule cities have "full power of self-government" and "look to the acts of the legislature not for grants of power ... but only for limitations on their powers." *Lower Colorado River Authority v. City of San Marcos*, 523 S.W.2d 641 (Tex.1975). The intention of the legislature to impose such limitations must appear with "unmistakable clarity;" and if the limitations arise by implication, the provisions of the law must be "clear and compelling to that end." *Id.*, at 645.

■ We do not accept the conclusion reached by the court of appeals that these statutes preclude College Station's power to enact and enforce the park land dedication ordinance. Article 1175 expressly states that the enumerated powers therein are "among the other powers that may be exercised by any [home rule] city." Article 1176, TEX.REV.CIV.STAT.ANN., also provides that the enumeration of powers in article 1175 shall never be construed as an implied limitation on home rule powers. *See also Lower Colorado River Authority*, 523 S.W.2d at 644. Likewise, article 6081e does not "unmistakably" limit the power of a home rule city to require neighborhood park land dedication in connection with subdivision regulation. Article 6081e also applies to counties and general law cities, and

thus serves as a grant of specific powers to these non-home rule entities.

## CONCLUSION

College Station's park land dedication ordinance, on its face, is not unconstitutional nor is it invalid on statutory grounds. Turtle Rock did not present any summary judgment evidence to show that the ordinance was arbitrary or unreasonable as applied to it. Therefore, summary judgment was improper because Turtle Rock did not prove its cause of action as a matter of law. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979).

We reverse the judgments of the courts below and remand to the district court for trial in accordance with the guidelines set forth in this opinion.