

# THE ATTORNEY GENERAL
## OF TEXAS

November 25, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Terral R. Smith          Opinion No. JM-827
Chairman
Natural Resources Committee        Re: Authority of an Under-
Texas House of Representatives      ground Water Conservation
P. O. Box 2910                      District created under the
Austin, Texas    78769              authority of article XVI,
                                    section 59,  of the Texas
                                    Constitution

Dear Representative Smith:

You ask several questions about a statute enacted by the 70th Legislature, see Acts 1987, 70th Leg., ch. 992, at 6764 (enacting S.B. No. 1518 hereinafter referred to as the bill), creating the Anderson County Underground Water Conservation District. The legislature enacted the bill pursuant to the authority of article XVI, section 59, of the Texas Constitution, a provision authorizing the creation of special districts to conserve and develop the state's natural resources. It has been suggested that the district was created solely in an attempt to regulate a proposed hazardous waste management facility in the area. The facility in question plans to use space created by the dissolution of salt within a salt dome (the Keechi Dome) for the storage of hazardous wastes. The facility proposes to use fresh groundwater from the Carrizo-Wilcox Aquifer to dissolve salt within the Keechi Dome. The brine dissolved from the dome will be injected into another aquifer, a saline aquifer. Your questions focus primarily on the fact that section 12 of the bill grants the district powers that you assert have not been granted to other article XVI, section 59, districts.

Section 5 of the bill states:

> Except to the extent of any conflict with this Act or as specifically limited by this Act, the district is governed by and subject to Chapter 52, Water Code, <u>and has all the powers, duties, authorities, and responsibilities provided by Chapter 52</u>, Water Code,

except the authority to issue bonds and levy
taxes under Subchapters G and H, Chapter 52,
Water Code. (Emphasis added.)

Section 12 of the bill provides for the following
additional powers:

(a) The district may prohibit the
pumping or use of groundwater if the
district determines that the pumping would
present an unreasonable risk of pollution.

(b) The district may limit the pumping
of groundwater to uses determined by the
board to benefit the district.

(c) The district may require persons
holding a permit for an injection well to
purchase water from the district.

(d) The district may adopt regulations
for the disposal of salt dome leachate in
the district or may require disposal of salt
dome leachate outside the district.

Your first question is whether the bill creating the
district violates article III, section 56, of the Texas
Constitution. Article III, section 56, states "The
Legislature shall not, except as otherwise provided in
this Constitution, pass any local or special law"
(emphasis added) on certain enumerated subjects. See
Attorney General Opinion JM-535 (1986). Article XVI,
section 59, provides express constitutional authority to
enact laws that operate only in geographically defined
areas and that grant powers applicable only in that area
with regard to conserving and developing the state's
natural resources. See Brown v. Memorial Villages Water
Authority, 361 S.W.2d 453, 456 (Tex. Civ. App. - Houston
1962, writ ref'd n.r.e.); see also Attorney General
Opinion M-871 (1971).

Article III, section 56, also provides that "where a
general law can be made applicable, no local or special
law shall be enacted." The brief submitted by the
proposed hazardous waste management facility suggests
that, because the legislature has defined the powers of
underground water conservation districts in chapter 52 of
the Texas Water Code, a general law, the legislature
cannot define the powers of such a district in a special

law. The language in article III, section 56, however, must be construed in context with the first sentence of the provision and with the whole of article III, section 56. As indicated, section 56 recognizes that other provisions of the Texas Constitution may provide express authority for certain local and special laws. The argument that chapter 52 of the Water Code could constitute the exclusive authority for underground water conservation districts ignores the fact that chapter 52 was enacted to grant powers to districts created pursuant to article XVI, section 59, of the Texas Constitution. Without this constitutional authority, chapter 52 would be meaningless because most of the districts to which chapter 52 applies could not have been created. The fact that a general law is capable of providing for some district powers does not mean that article III, section 56, requires that general law define all of the powers of all districts.

A similar argument is that the bill violates article III, section 56, because the bill grants powers not generally made available to such districts, i.e., it exceeds the powers granted in chapter 52 of the Water Code. The dispositive question, however, is not whether the legislature has given the same powers to other districts in chapter 52 of the Texas Water Code. The purpose for special districts is to operate solely in geographically defined areas to serve the special needs of the area defined. Chapter 52 of the Water Code simply enumerates certain guidelines, powers, and duties for underground water districts to prevent waste, pollution, and drawdown of the water table. Chapter 52 contains general powers that may be used by any district governed by chapter 52. The legislature has granted additional powers to solve the special problems faced by particular districts to numerous districts created over the years under article XVI, section 59. General laws governing article XVI, section 59, districts apply to such districts only when the general laws are not inconsistent with the special acts creating the districts. Hidalgo County Water Control and Improvement District No. 1 v. Hidalgo County, 134 S.W.2d 464, 467 (Tex. Civ. App. - San Antonio 1939, writ ref'd); see also Attorney General Opinion JM-706 (1987). Consequently, chapter 52 cannot limit the powers granted by the bill in question. See also Acts 1987, 70th Leg., ch. 992, §5, at 6766 (chapter 52 applies to district only to extent it does not conflict with bill).

The dispositive question is simply whether the powers granted by the bill in question are within the general scope of powers contemplated by article XVI, section 59. See Attorney General Opinion M-871; cf. Davis v. City of Lubbock, 326 S.W.2d 699, 710 (Tex. 1959) (the legislature is not limited to creating the governmental bodies that are specifically set out in the Texas Constitution). Article XVI, section 59, does not restrict expressly the powers of the districts it authorizes the legislature to create. Nor does it provide that the powers of such districts must be uniform. As indicated, article XVI, section 59, was intended to authorize non-uniform laws to meet the needs of specific areas. Subsection (b) of section 59 provides that districts may hold "the authority to exercise such rights, privileges and functions concerning the [conservation of natural resources] as may be conferred by law." Additionally, as a general rule, the legislature may enact any law not prohibited by the state or federal constitution. Perkins v. State, 367 S.W.2d 140, 145 (Tex. 1963); see, e.g., Davis v. City of Lubbock, supra.

The brief from the proposed hazardous waste management facility suggests that regulation of groundwater within the boundaries of the district will have no effect on groundwater conservation because of the relatively small size of the district in relation to Anderson County and in relation to the major aquifer in the area. The brief asserts that, for this reason, the district's boundaries may not bear a rational relationship to the purposes for article XVI, section 59, districts. It has been alleged that the sole purpose of the district is to regulate the proposed hazardous waste management facility within the district. The argument is that this exceeds the general scope of power contemplated by article XVI, section 59, and is therefore an invalid local or special law because it is not "authorized" by article XVI, section 59. For example, in Attorney General Opinion M-871 (1971), the Attorney General struck down a local law prohibiting hog pens within a certain distance of residences because it was not within the power to regulate livestock granted in article XVI, section 23, of the Texas Constitution. As indicated, however, the legislature is not limited to creating the governmental bodies described in article XVI, section 59. Davis v. City of Lubbock, 326 S.W.2d at 710.

Moreover, this office cannot say as a matter of law that this district's boundaries and powers do not relate

to the water conservation powers contemplated by article XVI, section 59. The legislature made a legislative fact finding that there exists a public necessity to create this particular underground water district pursuant to article XVI, section 59. This office cannot "second-guess" the legislature's fact-finding. The opinion process was not intended or designed to resolve complex factual disputes. Additionally, a statute under constitutional scrutiny should be upheld if reasonably possible. State ex rel. Grimes County Taxpayers Association v. Texas Municipal Power Agency, 565 S.W.2d 258, 266 (Tex. Civ. App. - Houston [1st Dist.] 1978, writ dism'd). For these reasons, the bill creating the Anderson County Underground Water Conservation District does not on its face violate article III, section 56, of the Texas Constitution.

Your second question is premised on the assumption that the bill grants the district the power to indirectly affect the location, construction, or operation of a hazardous waste management facility. You ask whether this power is violative of the Texas Solid Waste Disposal Act, article 4477-7, V.T.C.S. See also Tex. Water Code ch. 27 (the Injection Well Act). Section 4(e)(6) of article 4477-7 provides that a facility that obtains a permit from the Texas Water Commission pursuant to section 4(e) shall not be required to obtain a permit for the siting, construction or operation of the facility from any local government or other political subdivision of the state. Section 4(e)(6) also prohibits political subdivisions from enacting rules, regulations, or ordinances that conflict with or are inconsistent with state requirements for hazardous waste management facilities. The Solid Waste Disposal Act contemplates that the Texas Water Commission shall have exclusive power regarding the impact on groundwater of the siting, construction, or operation of hazardous waste management facilities.

This argument appears to be that the exercise of powers granted to the district in section 12 of the bill will necessarily interfere with the construction of a particular hazardous waste facility. It has been suggested that only a uniform, state-wide policy regarding the siting, construction and operation of hazardous waste management facilities will enable Texas to maintain adequate disposal capacity for wastes generated by industries within its borders. The effect a series of bills such as the one at issue here could have on the uniformity of the state's regulation in this subject area may be significant. It must, however, be presumed that

the legislature considered relevant policy questions when it enacted the bill creating the district in question. See also Smith v. Davis, 426 S.W.2d 827 (Tex. 1968) (wisdom of law is legislature's prerogative, not the courts').

The legal basis of this argument appears to be that because site preparation such as dissolving salt in the Keechi Dome is directly related to the construction of a hazardous waste facility, the powers granted to the district in section 12 of the bill conflict with the Texas Water Commission's jurisdiction to control the siting, construction, and operation of hazardous waste facilities. It is not clear whether the bill in question is in "conflict" with the Texas Water Code in the manner you suggest. Although there clearly exists some overlap between the effect of the powers that may be exercised by the district, it is not clear that the two pieces of legislation conflict in the legal sense that they cannot both be given effect. See Cole v. State, 170 S.W. 1036, 1037 (Tex. 1914) (effort must be made to reconcile two statutes that appear to be in conflict). In the event of an irreconcilable conflict, the latest expression of legislative intent ordinarily controls. See id. Additionally, as indicated, general laws apply to article XVI, section 59, districts only when the general laws are not inconsistent with the special acts creating the districts. Hidalgo County WCID No. 1 v. Hidalgo County, 134 S.W.2d at 467. The Solid Waste Disposal Act and the bill creating the Anderson County Underground Water Conservation District, however, are not on their face in irreconcilable conflict. An attempt must be made to give effect to both.

On the other hand, whether the actual application of particular rules and regulations of the district may conflict with the Water Commission's exclusive permitting authority under section 4(e)(6) of article 4477-7, V.T.C.S., depends on specific rules and regulations enacted by the district and on the facts surrounding their application. Under section 4(e)(6), the party challenging the district's rules must shoulder the burden of proving that the rule is in conflict with state requirements.

Your third question is whether the bill violates the equal protection requirement of article I, section 3, of the Texas Constitution insofar as the bill authorizes the district to require injection-well permit holders to purchase water from the district. Article I, section 3, is roughly analogous to the equal protection clause of the

Fourteenth Amendment to the United States Constitution, which prohibits the discriminatory treatment of similarly-situated persons. See San Antonio Retail Grocers, Inc. v. Lafferty, 297 S.W.2d 813 (Tex. 1957). Different legal classifications are not, however, prohibited if there exists a "rational basis" for the classification. See Attorney General Opinion JM-766 (1987) (and cases cited therein). The test of a "rational basis" under article I, section 3, is whether any basis for the classification exists that could have seemed reasonable to the legislature. San Antonio Retail Grocers v. Lafferty, 297 S.W.2d at 815; Texas Board of Private Investigators and Private Security Agencies v. Bexar County Sheriff's Reserve, 589 S.W.2d 135, 137 (Tex. Civ. App. - San Antonio 1979, no writ). Legislation limited in operation to a small portion of the state or prescribing different rules for distinct geographic areas is not invalid on equal protection grounds when there exists a reasonable basis for the distinction and all similarly-situated persons in the geographic area are treated equally. Mouton v. State, 627 S.W.2d 765, 767 (Tex. App. - Houston [1st Dist.] 1981, no writ).

The brief submitted by the hazardous waste management facility affected by the bill suggests two basic equal protection arguments against the bill. First, that no reasonable basis exists for regulating groundwater users within the particular boundaries of the district because of the relatively small size of the district in relation to Anderson County and in relation to the major aquifer underlying the district. The brief suggests that the boundaries of the district were drawn to center around one specific injection-well operation. Part of this argument is that no reasonable basis exists for regulating injection-well permit holders within the district and not regulating other injection-well permit holders located over the affected aquifer. The second basic equal protection argument is that injection-well permit holders as a class do not have sufficiently unique characteristics as groundwater users to justify the different treatment contemplated by section 12(c). The legislature, however, apparently found some basis both for distinguishing injection-well permit holders from other users of groundwater and for defining the particular area covered by the district. At least one Texas case upheld the creation of a subsidence district that did not include surrounding areas containing wells that contributed to the subsidence. See Beckendorff v. Harris-Galveston Coastal Subsidence District, 558 S.W.2d 75 (Tex. Civ. App. - Houston [14th

Dist.] 1977), aff'd per curiam, 563 S.W.2d 239 (Tex. 1978). The court was persuaded that the greater severity of the problem in the area of the district justified different treatment. Whether the area covered by the Anderson County Underground Water Conservation District is such that it justifies different treatment and whether injection-well permit holders have special characteristics as groundwater users that affect underground water conservation depend on complex questions of fact. The opinion process was not designed to resolve fact questions. Thus, this opinion cannot resolve your equal protection question.

Your fourth question is whether the bill fails to contain sufficient standards to guide the exercise of authority delegated to the district in section 12. It is well-established that the legislature may not delegate its power to make law. See Tex. Const. art. III, §1; see also Tex. Const. art. II, §1; Housing Authority of City of Dallas v. Higginbotham, 143 S.W.2d 79, 86 (Tex. 1940). The legislature may, however, delegate the tasks of making rules and of making determinations of fact to which existing law and legislative policy are to apply so long as the legislature provides standards to guide the exercise of delegated powers and duties. Housing Authority of City of Dallas v. Higginbotham, 143 S.W.2d at 87. Such standards may be broad when conditions must be considered that cannot be investigated conveniently or effectively by the legislature. Id.; State ex rel. Grimes County Taxpayers Association v. Texas Municipal Power Agency, supra; cf. Texas Antiquities Committee v. Dallas County Community College District, 554 S.W.2d 924, 928 (Tex. 1977) (addressing the standards for delegation in terms of unconstitutional vagueness under the federal Constitution). Thus, this opinion cannot resolve your equal protection question.

The specificity of standards required depends on the nature of the power, the agency exercising the power, and the subject matter covered. See Texas Antiquities Committee, 554 S.W.2d at 927. In the Texas Antiquities Committee case, the Texas Supreme Court found insufficient standards in a statutory grant of authority to preserve "buildings of historical interest" to justify denying a permit to demolish certain buildings. 554 S.W.2d at 927-28; see also Spann v. City of Dallas, 235 S.W. 513 (Tex. 1921). In contrast, in Housing Authority of City of Dallas v. Higginbotham, 143 S.W.2d at 86, the Texas Supreme Court upheld the Housing Authorities Law, a

statute containing a list of general factors to guide the authority in determining whether certain housing conditions were detrimental to the public safety and health. The act, however, left to the discretion of the housing authority the power to determine whether a public need for housing improvements existed in a particular area. The Supreme Court concluded that "taking into consideration the varying conditions throughout the state to which the law must apply, we conclude that the legislature has furnished a sufficient guide for the housing authority." 143 S.W.2d at 87. Similarly, in State ex rel. Grimes County Taxpayers Association v. Texas Municipal Power Agency, 565 S.W.2d at 273, the court of appeals upheld a statute that granted an agency relatively broad powers to provide for electric power. See V.T.C.S. art. 1435a.

Section 12 of the bill in question does not constitute a standardless delegation. Subsections (a) and (b) of section 12 are the only non-specific grants of authority in section 12. Subsection (a) grants authority to "prohibit the pumping or use of groundwater if the district determines that the pumping would present an unreasonable risk of pollution." What constitutes an "unreasonable risk of pollution" in particular cases depends on conditions that cannot be conveniently or effectively investigated by the legislature. Accordingly, such standards are not overly broad. See Housing Authority of City of Dallas v. Higginbotham, 143 S.W.2d at 87. Subsection (b) provides "The district may limit the pumping of groundwater to uses determined by the board to benefit the district." The phrase "benefit the district," when taken alone, appears overly broad. The phrase must, however, be construed in the context of article XVI, section 59, and of the bill as a whole. The bill and the constitutional provisions pursuant to which it was enacted relate to the conservation of underground water in the district. The phrase "benefit the district" refers to conserving underground water resources. The steps necessary to do so depend on the specific conditions prevailing in the district -- conditions the legislature cannot adequately anticipate. Additionally, section 5 of the bill provides that, except to the extent of conflict with the bill, the district shall be governed by chapter 52 of the Texas Water Code. See generally Hidalgo County Water Control and Improvement District No. 1 v. Hidalgo County, 134 S.W.2d 464 (Tex. Civ. App. - San Antonio 1939, writ ref'd) (provisions of general law apply to such districts when the provisions are not inconsistent with special acts of their creation). The bill, by reference

to chapter 52, contains ample standards to guide the district's actions. See, e.g., Tex. Water Code §§52.151, 52.166, 52.169, 52.170.

Your fifth and final question is whether subsection (c) of section 12 of the bill works a taking without compensation in violation of article I, section 17, of the Texas Constitution. Article I, section 17, of the Texas Constitution provides, in part:

> No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money. . . .

See City of College Station v. Turtle Rock Corporation, 680 S.W.2d 802 (Tex. 1984). A "taking" results from an exercise of the government's eminent domain power. The term, a "taking," ordinarily refers to an unconstitutional taking, i.e., one without compensation.

Under certain circumstances, property may be appropriated constitutionally by government action without any compensation as an exercise of the state's police power -- the power to protect the public health, safety, and welfare. Attorney General Opinion JM-600 (1986) (and cases cited therein). Traditional "taking" law analysis distinguishes the police power from the eminent domain power by focusing on whether the government is preventing a public harm as opposed to forcing a private party to give property for a public benefit. The Texas Supreme Court, however, holds that property may not be taken without compensation under certain circumstances, even in the exercise of the police power. City of College Station, 680 S.W.2d at 804; City of Austin v. Teague, 570 S.W.2d 389, 391 (Tex. 1978); Attorney General Opinion JM-294 (1984). The Texas Supreme Court in City of Austin v. Teague, rejected an arbitrary application of the "police power" -- "eminent domain" distinction in favor of a balancing test of whether the public need outweighs the private loss. 570 S.W.2d at 392-93.

Subsection (c) of section 12 authorizes the district to "require persons holding a permit for an injection well to purchase water from the district." The brief submitted

by the hazardous waste management facility to be located in the district contends that this provision requires injection-well permit holders to purchase water regardless of whether they need it and regardless of the use to which it will be put. We disagree. A reasonable reading of subsection (c) of section 12 is that the district may require injection-well permit holders to purchase water from the district only for uses related to injection-well operations. Even with this narrow construction, however, the bill raises a serious constitutional question.

You suggest that requiring injection-well permit holders who are landowners to purchase water from the district rather than to obtain water by pumping the groundwater[1] from beneath their land works a taking without compensation in violation of article I, section 17, of the Texas Constitution. Whether subsection (c) of section 12 authorizes the district to effect a taking depends on the extent of the power it grants to the district, on the nature of landowners' rights to groundwater beneath their land, and on the factual circumstances surrounding the district's exercise of its power.

The Texas Supreme Court recently reaffirmed that, under Texas law, landowners have "absolute ownership" of percolating groundwater beneath their lands. City of Sherman v. Public Utility Commission of Texas, 643 S.W.2d 681, 686 (Tex. 1983); City of Corpus Christi v. City of Pleasanton, 276 S.W.2d 798, 802 (Tex. 1955). A corollary to this "absolute ownership" is the landowners' right to capture the groundwater beneath their lands. Id. The right of landowners to groundwater beneath their land is an incident to their ownership of the land -- a part of the land. Because groundwater is considered to be the property of the overlying landowner, under the common-law rule, the landowner may withdraw it regardless of the effect of the withdrawal on other wells or the

---

1. Throughout this opinion, the term "groundwater" refers to percolating subsurface water as opposed to an underground stream. The two categories of groundwater are subject to different legal standards. See Hutchins, The Texas Law of Water Rights, 558-60 (1961); see also Tex. Water Code §52.001 ("underground water" does not include subterranean streams).

reasonableness of the use to which it is put.  See City of
Corpus Christi v. City of Pleasanton, 276 S.W.2d at  801
(no common-law  cause  of  action  for  waste); See also
Friendswood  Development  Company  v.  Smith-Southwest
Industries, Inc., 576 S.W.2d 21, 29-30 (Tex.  1978)
(recognizing a cause  of action for  subsidence only  when
caused by negligent drilling or production of water well).

Although there are no  Texas cases directly on  point
for the  issue  at  hand, the  courts'  treatment  of  the
government's termination or  limitation of similar  rights
is instructive.  In In re Adjudication of the Water Rights
of the  Upper Guadalupe  Segment  of the  Guadalupe  River
Basin, 642 S.W.2d 438 (Tex. 1982), the Texas Supreme Court
held that the  state of Texas  may constitutionally  limit
riparian claimants  to  the  quantity  of  water  actually
beneficially used  during  a test  period  established  by
statute.  In specific,  the court held  that the  termina-
tion, after notice and upon reasonable terms, of  riparian
owners' rights to use non-flood waters after the  riparian
owner failed to use the right for a fixed number of  years
is not a taking of  property.  642 S.W.2d at 444-45.   The
right of riparian owners  is one of  use only because  the
riparian does not own the water that flows past his  land.
642 S.W.2d at  644; see Motl  v. Boyd, 286  S.W. 458,  468
(Tex. 1926).  The court acknowledged that riparian  rights
are vested rights.  642 S.W.2d at 645.  Nevertheless,  the
court reasoned  that,  because riparian  rights  are  only
usufructuary, there is no right  to the non-use of  water.
642 S.W.2d  at  445.  Consequently,  termination  of  a
purported "right of  non-use" is not  a taking.  See  also
Texas Water Rights  Commission v. Wright,  464 S.W.2d  642
(Tex. 1971) (reaching  similar conclusion  with regard  to
appropriated water rights).

Unlike the  riparian landowner's  right to  non-flood
waters, however, a landowner's "absolute ownership"  right
to groundwater  may  not  be characterized  so  easily  as
merely "usufructuary."  See  City of  Sherman  v.  Public
Utility Commission  of Texas,  supra.  Section  52.002  of
the code  confirms  landowners'  private  ownership  of
groundwater:

> The ownership and rights of the owner  of
> the land  and  his lessees  and  assigns  in
> underground water are hereby recognized, and
> nothing in this code  shall be construed  as
> depriving or  divesting  the  owner  or  his
> lessees and  assigns  of  the  ownership  or

> rights, subject to the rules promulgated by
> a district under this chapter. (Emphasis
> added.)

Subsection (a) of section 52.157 grants districts the power of eminent domain but provides, in subsection (b):

> The power of eminent domain authorized in
> this section may not be used for the
> condemnation of land for the purpose of
> acquiring rights to underground water or of
> water or water rights.

These provisions do not directly limit the district because general laws governing article XVI, section 59, districts control such districts only when the general laws are not inconsistent with the special acts creating the districts. _Hidalgo County WCID No. 1 v. Hidalgo County_, 134 S.W.2d at 467. These Water Code provisions do, however, indicate that a statute could not be enacted in Texas that has the direct effect of appropriating groundwater without an eminent domain provision to prevent a taking of private waters without just compensation and due process of law. As indicated, however, under certain circumstances, property rights may be limited by government action without compensation as an exercise of the state's police power.

The law with regard to the state's regulation of oil and gas provides a helpful analogy for groundwater regulation because the common-law property rights are similar. Texas recognizes landowners' ownership of oil and gas beneath their land. _Brown v. Humble Oil & Refining Co._, 83 S.W.2d 935, 940 (Tex. 1935). The common-law rule recognized an unlimited right to capture such oil and gas. _Id._ In _Brown v. Humble Oil & Refining Co._, 83 S.W.2d at 943-44, the Texas Supreme Court held that state regulation of oil and gas production is not unconstitutional merely because it operates as a restraint on private property rights. Regulation of production to prevent waste is within the state's police power and is valid provided it is not exercised in an unreasonable or arbitrary manner. _Id._ For similar reasons, the district's reasonable regulation of groundwater production would probably be upheld. _See_ Casebier and Starley, _Proration of Ground Water_ in PROCEEDINGS OF WATER LAW CONFERENCES 1956, at 167-68 (1956).

Subsection (c)  of section  12 apparently  gives  the district the   discretion to   require that   injection   well permit holders purchase their water from the district.  No other groundwater districts  have a  provision like  this. Several districts,  however,  charge  for their  regulatory actions on  a water  usage basis.   In Parker  v. El  Paso County Water  Improvement District  No. 1,  297 S.W.  737, 742-43 (Tex. 1927),  the Texas Supreme  Court addressed  a riparian landowner's claim  that an  article XVI,  section 59, district lacked the legal authority to charge riparian owners for the  use of  water from the  Rio Grande  River. The district in question excavated ditches for  irrigation and drainage within  its boundaries  and assessed  charges for the  use  of  the  reclamation  service  and  for  the construction and  maintenance  of its  irrigation  system. The district's  charges were  apportioned in  part on  the basis of water  use.  The court  determined that this  did not constitute a taking because the district did not claim any right to take the riparian owner's proportionate share of riparian water. 297 S.W. at 742-43.

In contrast, subsection  (c) of section  12 does  not merely assess a charge on the  use of water to defray  the district's expenses.  Subsection (c) purports to authorize the district  to  require certain  injection-well  permit holders  to  purchase water  from  the  district  without specifying that the cost of  the water will relate to  the district's expenses  of operation.   Nonetheless,  without knowing how  the  district  is  going  to  implement  such authority -- for example, how it will determine the charge for such water -- this decision cannot determine the  con-stitutionality of this provision.

Article XVI, section 59(a), of the Texas Constitution directs the  legislature  to  pass laws  to  conserve  the state's natural resources.  Brown v. Humble Oil and Refin-ing Co., 83  S.W.2d at  941.  As  indicated, whether  such laws constitute  a  taking involves  a  reasonableness  or balancing test dependent upon the facts in each particular case.  City of College Station, 680 S.W.2d at 804; City of Austin v. Teague, 570 S.W.2d at 393.  Accordingly, if  the district's  requirement  that  an  injection-well  permit holder purchase water  from the district  in a  particular case bears a reasonable  relationship to the  conservation of groundwater, such as to prevent its waste or pollution, and if the  benefit of  those requirements  to the  public outweighs the loss to  the landowner, an  unconstitutional taking  would  not  necessarily  occur.   Whether  the district's  requirements  that  an  injection-well  permit

holder purchase water from the district may thus be constitutionally prohibited depends on factual determinations beyond the scope of the opinion process.

### S U M M A R Y

The bill creating the Anderson County Underground Water Conservation District, see Acts 1987, 70th Leg., ch. 992, at 6764, does not violate, on its face, article III, section 56, of the Texas Constitution as an unauthorized local or special law. General laws, such as chapter 52 of the Texas Water Code, that govern article XVI, section 59, districts apply to such districts only when the general laws are not inconsistent with the special acts creating the districts.

The Solid Waste Disposal Act, article 4477-7, V.T.C.S., and the bill are not on their face in conflict. Whether the actual application of particular rules and regulations enacted by the district may conflict with the Water Commission's exclusive permitting authority under section 4(e)(6) of article 4477-7 depends on the specific rules and regulations and the facts surrounding their application.

Different legal classifications are not prohibited by the equal protection requirement of article I, section 3, of the Texas Constitution if there exists a rational basis for the classification. Whether the area covered by the Anderson County Underground Water Conservation District is such that it justifies different treatment and whether the persons particularly affected by the bill creating the district have special characteristics as groundwater users that justify different treatment depend on complex questions of fact. The opinion process was not designed to adjudicate fact questions.

The legislature may delegate the task of making rules and of making determinations of fact to which existing law and legislative policy are to apply so long as the

legislature provides standards to guide the exercise of delegated powers and duties. The bill creating the district contains sufficient standards for its delegation of power.

Reasonable governmental regulation of landowners' rights to groundwater is within the state's police power and would not, on its face, constitute a taking without compensation in violation of article I, section 17, of the Texas Constitution. Subsection (c) of section 12 of the bill creating the Anderson County Underground Water Conservation District authorizes the district to deprive landowners who are injection-well permit holders of the use of their groundwater for injection-wells. If the requirements to purchase water from the district bore a reasonable relationship to the conservation of groundwater, such as the prevention of waste or pollution, an unconstitutional taking would not necessarily result. Determination of a taking involves a balancing test dependent on the facts in each particular case.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General