### LUBY et al. v. BELL. (No. 8161.)

Court of Civil Appeals of Texas. San Antonio. Feb. 20, 1929.

Rehearing Denied March 20, 1929.

Tarlton & Lowe, of Corpus Christi, for appellants.

Sidney P. Chandler, of Corpus Christi, for appellee.

SMITH, J. In the early fall of 1914 three bales of cotton were deposited in the warehouse of the Corpus Christi Warehouse Company, a public warehouse operating under the provisions of the public warehouse acts embraced in chapter 37, Acts 1st Called Session, 33d Legislature, 1913 (title 131, Vernon's Sayles' Civ. Stat. 1914). The cotton had been grown on the farm of R. F. White by James P. Luby, a tenant, and was placed in the warehouse in the name of one Rafael Garcia, to whom negotiable warehouse receipts were issued by the warehouseman in the prescribed form. Shortly afterwards the three bales were seized and removed from the warehouse under a writ of attachment issued in a suit in the county court to foreclose the landlord's lien upon the cotton, and were sold in that proceeding. The warehouse receipts were subsequently purchased by Mary J. Luby, wife of James O. Luby, at a time and under circumstances not apparent from this record. In the fall of 1916 Mary J. Luby sold to Thomas Bell the said three warehouse receipts, along with fourteen similar receipts issued in 1916. When Bell ascertained that the cotton covered by the three receipts in controversy had been removed from the warehouse and disposed of, he brought this action against James O. and Mary J. Luby to recover the amount he had paid the latter for the warehouse receipts, with interest. Mary J. Luby died prior to the trial, and proper parties were substituted for her. The cause was submitted to a jury upon special issues, and judgment was rendered in favor of Bell as prayed for.

At the time the cotton was removed from the warehouse, appellee, Bell, was president of the warehouse company, and in that capacity in person surrendered and delivered the cotton to the levying officer, after consulting counsel thereon. He was still president of the warehouse company, and had his office at the warehouse, and was in that office, when he purchased the receipts from Mrs. Luby, although he was not then active in the management of the warehouse, but, on the other hand, was engaged in the business of buying and selling cotton. As a matter of course he had knowledge, at the time he purchased the receipts, that the cotton covered by them had been removed from the warehouse and disposed of, although it is obvious that at the time he purchased them he did not connect them with the original transaction, which had transpired two years before. These three receipts were handed him for inspection along with fourteen other receipts, the three being of the 1914 series and the others of the 1916 series. After inspecting them, he purchased all of the seventeen receipts, paying for them at the time. He testified:

"These tickets 2432, 2434, and 2435 were with the seventeen tickets that I got. I did

not know at the time that I received these tickets that the cotton was not there. I ascertained that fact almost immediately after I had paid for the cotton. When the tickets were passed back to the bookkeeper to get a check for them and immediately after the check was issued Mr. Eustace asked the question, 'I wonder if that can be any of the cotton attached some two years ago?' and I said, 'That can be determined by the bale book'; and we found that the tickets showed to be three of the seventeen tickets were the three tickets that had been voided by the court."

In this connection, it appears that Mr. and Mrs. James O. Luby were the parents of James P. Luby, on account of whose default the attachment proceedings were had and the cotton was seized and removed from the warehouse. But it does not appear that Mrs. Luby was aware of any part of the history of the attachment proceedings, or of the seizure and removal of the cotton from the warehouse, while Mr. Luby expressly denied any knowledge of these matters. So far as the record shows to the contrary, she bought up a number of warehouse receipts indiscriminately, and the fact that the three receipts in controversy were among them seems to have no significance. The evidence shows, and the jury found, that the Lubys made no representations to appellee in making the sale of the seventeen receipts to him. It may be added that the record warrants the assumption that, at the time of the sale of the receipts to appellee, neither party had any *active* knowledge that the cotton covered by any of the receipts was not in the warehouse; that both parties were acting in good faith in the sale and purchase.

■ The jury found that "the amount of damages" appellee "incurred from the acts or omissions of both Mary J. Luby and James O. Luby" was $465.79, being the amount appellee paid Mrs. Luby for the three receipts, with interest. On this finding, alone, and without·explanation of its meaning, the trial court rendered judgment against the Lubys for the amount stated. This issue was submitted to the jury without any accompanying definitions, instructions, or explanations from the court, nor were any such requested by the parties, who are therefore cut off from complaining of the omission. The method by which the jury determined the issue, the facts and circumstances they considered, the very meaning of the finding, are matters of the purest conjecture. What acts, what omissions, of the Lubys caused the loss to appellee? Were such acts or omissions wrongful, or were they done in the utmost good faith? The jury had previously found that the Lubys made no representations that the cotton upon which the receipts were based was still in the warehouse, and there was nothing in the evidence which would justify an inference that the Lubys had any knowledge of the removal of the cotton from the warehouse. The whole record excludes any inference of any wrongful act or omission of the Lubys. The finding of the jury is therefore without value in the case. By this process the appeal is resolved into the inquiry of whether or not the Lubys are liable to appellee as a matter of law by reason of the mere fact that the receipts had lost their value through the prior removal and disposal of the cotton, under the undisputed circumstances of the case.

■ The receipts, conceded to be regular in form and substance, were negotiable, having the same dignity in that respect as a promissory note, and the transferee and holder thereof "shall be considered and held as the actual and exclusive owner, to all intents and purposes, of the property therein described." Article 7825, Ver. Civ. Stats. 1914. The receipts constituted contracts between the warehouse company and the person storing the cotton in that company's warehouse, and the company was obligated under those contracts to deliver the cotton to the depositor or his lawful assignee upon presentation and demand. The contracts were assignable, were negotiable. They constituted choses in action in favor of the holder against the warehouseman. If the warehouseman fails or refuses to deliver the cotton upon demand of the holder, the latter's remedy is against the warehouseman and not against the assignor, for "the assignment and acceptance of a warehouse receipt in fulfillment of a contract to deliver the goods represented by it is presumed to be in complete discharge of the contract, and the assignee has no recourse against the assignor for failure of the warehouseman to deliver the goods." 40 Cyc. 419.

The defenses available to the warehouseman are of no concern in this appeal. Nor are we here concerned with the question of the effect of appellee's prior knowledge that the cotton had been removed from the warehouse and put out of reach at the time he purchased the receipts from the Lubys. These are matters to be tried out and determined in the controversy between the warehouseman, on the one hand, and appellee, as the holder of the receipts, upon the other hand. Appellants, having had no notice of these matters at the time of the transfer to appellee, are not bound by them. The defenses arising from the history of the transaction, not having come to the notice of appellants prior to the transfer and indorsement, are not available as against them in a subsequent suit to recover the amount they received for the receipts.

The judgment must be reversed, but, as the case is possibly susceptible of further proof upon the matters of notice, the cause will be remanded for further proceedings in consonance with this opinion.

Reversed and remanded.

On Motion for Rehearing.

The decision of the case is not based upon any lack of evidence to support any of the findings of the jury. It is based, rather, upon the finding that the Lubys were not guilty of any fraud, and upon the inconclusiveness of the finding upon the issue of damages. Appellee's first proposition in his motion for rehearing is therefore inapplicable.

Appellee's second proposition is based upon the assumption that the warehouse receipts were nonnegotiable, and cites article 571, R. S. 1925, in support of the assumption. Article 571, however, is a general statute, whereas article 7825, cited and discussed in the original opinion, is special in its nature, and the provision therein, making such receipts negotiable, controls over the general statute, which relates generally to nonnegotiable instruments under the law merchant. The second proposition is therefore likewise inapplicable.

The motion is overruled.