## HIDALGO COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. 1 et al. v. HIDALGO COUNTY et al.
### No. 10612.

Court of Civil Appeals of Texas.
San Antonio.
Aug. 30, 1939.

Rehearing Granted in Part Nov. 29, 1939.

J. F. Carl and Geo. L. Wideman, both of Edinburg, for appellants.

Hill, Greer & Franki, of Mission, for appellees.

SMITH, Chief Justice.

Hidalgo County Water Control & Improvement District No. 1 was originally organized in 1921 and 1922 as a water control district under the provisions of an Act covered in Ch. 2, Title 128, R.S. 1925, Arts. 7622, et seq., as amended, Vernon's Ann.Civ.St. art. 7622 et seq., and afterwards, in 1926, was converted into a water control and improvement district under the provisions of Ch. 3 A, Title 128, Art. 7880 —1 et seq., Vernon's Ann.Civ.Stat. It was organized and is operating under authority of Art. XVI, sec. 59 of our State Constitution, Vernon's Ann.St. The District lies wholly within Hidalgo County. In 1925 and 1926 appellant District constructed and built its main canal from its reservoir and settling basin down through the southwest part of the county, in an easterly direction, toward the city of Mission. Said canal occupies a right-of-way approximately 200 feet in width, and has been used by appellant District since its construction for the purpose of diverting water from the Rio Grande and distributing it throughout the District's irrigation system.

At the time it was constructed the main canal intersected and crossed five existing public highways operated by Hidalgo County, and the District constructed bridges over the canal at four of such crossings (which we here designate as No. 1, 2, 3 and 5 for convenience) and maintained them at its own expense until a few years ago, when it ceased to care for them upon the theory and contention that that was the duty and responsibility of the County and not of the District. It seems that, in the absence of a bridge, passage over a fifth crossing (No. 4) is made by fording. And in the meantime, the County contends, all the crossings have fallen into disrepair and have become dangerous to travelers because of the failure and refusal of the District to keep them in good condition.

Since the construction of the District main canal the County has opened two other roads (Nos. 6 and 7) to cross said canal. When the road at crossing 6 was established the District caused a bridge to be put in, but in later years when the bridge fell into decay and the District refused to repair or replace it, the County built a new one in its place at a cost of $970. The District refused to repair or maintain this bridge, or reimburse the County for the cost of its construction.

Late in 1937 the County opened another road, to cross the main canal at crossing 7. Upon the District's refusal to put in a bridge at that crossing, "the County", as stated by appellee, "installed three new 78-inch corrugated iron pipes at that point, which installation was completed on or about the 30th day of January, 1938, at the reasonable cost of $1,162.82." The bridge is still in an incomplete state, requiring further additions thereto to preserve and render it safe for public use.

Hidalgo County brought this suit against the District and its officials upon the following cause of action:

1. To recover of the District the expenses incurred by the County in rebuilding bridge at crossing 6 ($970), and installing parts for new bridge at crossing 7 ($1,162.82).

2. For writ of mandamus requiring the District through its proper officers to (a) repair and renovate all seven of said bridges; (b) install suitable bridge at crossing 4; (c) install sufficient headwalls at each end of bridge at crossing 7; (d) hereafter maintain all bridges over all crossings and keep them in repair—all at the expense of the District.

The case was tried to the court upon agreement on all the facts except as to the condition of the bridges as being dangerous, etc., and as to the existence of a public road at crossing 4 at the time the main canal was constructed.

The court rendered judgment granting in full the relief prayed for by the County as stated above. The District has appealed, and both parties have favored this Court with excellent briefs upon the very difficult questions presented in the appeal.

The principal questions raised in the appeal must be decided, not by the common law or decisions of our own courts, of which none seem analogous here, but from the constitutional and statutory provisions prescribing the powers, duties and obligations of County Commissioners' Courts and Water Control and Improvement Districts, respectively.

The legislature, under constitutional grant and mandate, has invested county commissioners' courts with control over all roads and bridges "in their counties", coupled with the power and duty to lay out, open and maintain all necessary roads, and construct and maintain in safe condition all necessary bridges in the counties.

Const. Art. V, Sec. 18, Art. XI, sec. 2, Art. XVI, sec. 24; Arts. 2351, 2352, 6794, R.S. 1925.

Under that mandate the primary duty rests upon the county to build and maintain or cause to be built and maintained all bridges necessary to the proper operation and maintenance of its roads, and even where that duty is delegated to other agencies, such as under Arts. 7585, 7746 and 7880—123, hereinafter discussed, the primary duty still rests upon the county, so that if the secondary agency fails and refuses to perform, the county shall nevertheless put in and maintain such bridges, and exact reimbursement from the defaulter, through the courts, if necessary. Orange County v. Canal Company, Tex. Civ.App., 143 S.W. 963.

The appropriation and use of public waters for irrigation and related purposes was first recognized and provided for by the Texas Legislature in 1895, when it enacted the statutes embraced in Title LX, under the head of "Irrigation" and including Arts. 3108 et seq., R.S.1895. The act provided for the appropriation and distribution of public waters for said purposes by "persons, associations of persons and corporations" bringing themselves within the terms of the act, and provided that corporations could be formed under that act, as well as under the general incorporation laws, for the purposes contemplated. It laid down methods, rules, regulations and procedure by which the entities named could procure, appropriate and distribute the public waters of the State, and defined their duties, obligations and liabilities. As pertinent to this inquiry it was provided in Art. 3128, R.S. 1895:

"All said persons, corporations and associations shall have the right to run along or across all roads and highways necessary in the construction of their work, and shall at all such crossings construct and maintain necessary bridges for the accommodation of the public, and shall not impair the usefulness of such road or highway; * * *."

At the time of the passage of that act of 1895 there were no public irrigation or water districts authorized or operating in the state, and it follows as a matter of course, therefore, that the 1895 act related only to private persons and entities. Said act of 1895 was repealed, substituted and amended from time to time, and finally

incorporated into Ch. I, Title 128, R.S. 1925. Its original purposes and procedures were preserved or modified or enlarged to fit developing conditions, without material change in the act. Afterwards, as constitutional and statutory provisions for public irrigation and water control and improvement districts were put into effect, the general act, supra, was amended to include such public entities in its coverage. So that the general law now provides, in the present article 7585, that:

"All persons, associations of persons, corporations, and water improvement or irrigation districts shall have the right to run along or across all roads and highways necessary in the construction of their work, and shall at all such crossings construct and maintain necessary bridges, culverts, or siphons, and shall not impair the uses of such road or highways; * * *."

In 1905, in pursuance of constitutional authorization of 1904, Art. III, sec. 52, Vernon's Ann.St.Const., the legislature for the first time provided for the organization and operation of public irrigation districts, constituting them public governmental agencies. The act was very comprehensive in its purposes, scope and effect. It provided for the organization and government of the districts therein authorized; for the acquisition and construction of works for the irrigation of lands within their respective territorial bounds; for the issuance of bonds and the appropriation of the proceeds thereof for district improvements; for the distribution of water for irrigation purposes, etc.; for the exercise by the district of the right of eminent domain. The act did not provide the method by which such districts could acquire or appropriate public waters, or prescribe rules and regulations for, or limitations upon, their distribution thereof; it is conceded that for these purposes, and all other applicable purposes not inconsistent with the provisions of the creating act, such districts were relegated to the general act, now Ch. I, Title 128, R.S. 1925, which embraces Art. 7585, supra, set out above.

Said act of 1905, c. 122, creating public irrigation districts, was repealed and substituted by an act of 1913, c. 172, substantially to the same general effect as the former act. The act of 1913 was in turn repealed and substituted by the act of 1917, Gen.Laws 35th Leg.Reg.Sess., Ch. 87, sec. 107, p. 206, providing for the establishment and operation of water improvement districts and validating all debts created under prior acts. It embraces no change affecting this appeal. That act was brought forward into the revision of 1925 in Title 128, "Irrigation and Water Rights", under Ch. II, "Water Improvement Districts" and is the law today.

Again in 1925 the legislature passed an act (independent of the revised statutes of that year) in the same Title 128 but under Ch. IIIA, as arranged in Vernon's Civ. Stat., for the creation of water control and improvement districts, prescribing their purposes, powers, duties, obligations, etc. Acts 1925, 39th Leg. Ch. 25, p. 86. The act provided, precisely as in the case of water improvement districts, Art. 7746, Vernon's Ann.Civ.Stat., as affecting the questions raised here:

"Such districts are hereby authorized and required to build all necessary bridges and culverts across and over all canals, laterals and ditches made and constructed by such district, whenever the same crosses a county or public road, and shall pay for the same out of the funds of such district."

So, it will be seen that the general statute, Art. 7585, requires the entities to which it applies to "build and maintain" and pay for bridges over their canals at county road crossings; whereas, the more specific statute providing for organization, government and control of public water improvement districts, requires such districts to "build" such bridges at their own expense. Arts. 7746, 7880—123 Vernon's Ann.Civ. Stat.

▮ It being conceded that all the provisions of the general law apply to the public districts, when not inconsistent with specific acts of their creation, it is not difficult to go a step further and hold, as we now do, that when specific provisions of the general law, if given effect, would nullify or modify specific provisions of the special act concerning particularized rights and duties of the districts created by it, the latter provisions must prevail over those of the general law. Hunt v. Atkinson, Tex.Com.App., 12 S.W.2d. 142; Fortinberry v. State, Tex.Com.App. 283 S.W. 146; Luby v. Bell, Tex.Civ.App., 15 S.W. 2d 106. But this conclusion does not settle the appeal, for there remains the matter of construction to be put upon Art. 7880—123, which we hold to be controlling in the case.

▮ Without further postponement we hold under the language of Art. 7880—123,

that the burden of building bridges over its canals at intersections with county roads is upon the district only in cases where such canals were dug across roads already laid out and opened to public use so as to constitute the canal an obstruction of an existing road. To hold otherwise would burden one existing public easement with the duty of building and maintaining a subsequent intersecting public easement, thereby empowering the one to destroy or impair the other, without liability for the resulting injury to the one first lawfully in possession. Both the county and the district are creatures of the constitution, which declares them to be governmental agencies, operating in their respective spheres of public usefulness. To give one the power, without liability, to destroy or materially impair existing lawful improvements of the other would be subversive of the design and purpose of the public policy declared in the organic law respecting each agency. It is not conceivable that such was the purpose of the legislature, and that destructive purpose may be avoided only by construing the statute as we have construed it, which construction we deem to be reasonable in the light of the language of the act.

We therefore hold that under the law appellant District was required to bridge, at its own expense, the county roads which had already been laid out and opened and put in use when appellant's canals were constructed across them; but appellant cannot be required to build or maintain bridges on those county roads which have been laid out and opened since the canals were constructed.

The next, and a more difficult question is, Does the statutory requirement that the district at its own expense "build" bridges across county roads intersected by its canals include the duty and obligation to "maintain" such bridges after building them?

It has been held that an authority given a governmental agency to expend funds to "build" a public improvement carries with it, by necessary implication, the further authority in that agency to use such funds to repair and maintain the completed improvement. Bell County v. Lightfoot, 104 Tex. 346, 138 S.W. 381. We are inclined to take the implication a step further and hold that in view of the history of this and related legislation and of the public policy crystallized therein, and

giving effect to necessary implications from the several statutes, to say nothing of the apparent justice of the case, it was the intention of the legislature in enacting Arts. 7746 and 7880—123 to require appellant and similar districts to restore county roads to the same condition of safety in which the districts find and cross them; to relieve the county of any expense made necessary by the intrusion of the district upon its prior easement. Because of the very nature of said intrusion—a sort of legal trespass—the statute by express language put the duty upon the district to restore the status quo ante, and by implication, to maintain that status so long as the district obstructs the free use of the county's prior easement.

It follows from the conclusions stated that the judgment of the trial court must be reversed in part, and since it must be reversed in part, we think it is better to reverse it in its entirety so that the whole case may be fully developed and determined below in consonance with this decision of the principal issues. Upon another trial the County, if found to be entitled to recover, should be restricted in such recovery to such reasonable and necessary disbursements, if any, as it has been required to make in rebuilding or repairing and maintaining bridges at the intersection of the district's canals with county roads which had been laid out and opened and were in the public use at the time said canals were constructed. The County may not recover for expenditures upon construction, repair or maintenance of bridges for roads laid out and opened by the County across pre-existing district canals. If the roads were in operation first, the duty to build and maintain bridges at intersections with subsequently built canals rests upon the district; if the canals were there first, then the duty rests upon the County to build and maintain its bridges thereover. We are of the opinion, it should be added, that the questions of limitation and laches are not in this case, as it was developed below.

In view of another trial, we cannot with propriety discuss the sufficiency of the evidence to support the implied finding that there was an existing county road at the intersection of what is known in the record as Goodwin's East line and the district's main canal; or the sufficiency of the evidence upon the issues of the present condition of existing bridges, or the necessity for repairs or replacements therein; nor

shall we pass upon the matter of mandamus requiring the district officials to do the things commanded in the judgment below. The whole case is relegated to the Court below, to which end the judgment will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

On Appellees' Motion for Rehearing.

■ Both parties have filed motions for rehearing, and we have again reviewed the record in view of those motions. We adhere to the conclusions of law arrived at in the original disposition, but further consideration of the record requires readjustment and application of some of the facts of the case. To that end we have concluded to modify some of the original findings, and conform the remedies to those modifications, without attempting to here restate the whole case.

It was stipulated by the parties below that the following county roads were in existence and in necessary use by the public at the time the District constructed its main canal across said roads:

1. Ojo de Agua or Abram Road.

2. Calvin Greene Estate Road.

3. Road between Porciones 50 and 51.

4. Mission Groves Estate or Dunbar Road.

5. Inspiration Boulevard.

It was further stipulated that at the time its canal intersected those roads the District constructed, or caused to be constructed, bridges over all of said roads and that all such bridges "have become worn out and have fallen into a state of disrepair and dilapidation so that same are now in bad condition and need of repair or replacement. It is now necessary that each of said bridges be repaired or replaced with a new structure, so as to make each of the crossings safe and convenient for public travel." In addition to those stipulations the trial judge found, specifically, and upon sufficient evidence, that another road, the Goodwin East Line Road (No. 6) "was (1) a public or county road in use at the time the defendant District's Main Canal was constructed; (2) that no bridge was constructed by defendant District at the point where this road was intersected by the Canal; and (3) that the road continued down to date to be used by the public, although obstructed by the Canal," and, by necessary implication, that a bridge at said crossing was necessary for the safety and convenience of the public. We must adopt those stipulations and findings as our findings of fact in the case.

■ Applying to those facts the law as announced in the original opinion, it was the duty and obligation of the District to build and maintain bridges over its canals at each of said crossings over county roads. The District did construct bridges at each of those crossings except the Goodwin East Line crossing, but refuses to keep those bridges in necessary repair, and refuses to construct a necessary bridge at the Goodwin East Line Crossing. In view of these refusals, the trial court properly granted the writ of mandamus requiring the District to perform those obligations. McQuillan Municipal Corporations (2d Ed) §§ 2713, 2727; Orange County v. Canal Co., Tex.Civ.App., 143 S.W. 963; Miller v. State, Tex.Civ.App., 53 S.W.2d 838, writ refused.

■ On the other hand, the trial court erred in requiring the District to build and maintain bridges at the other two crossings involved, over county roads which were laid out and opened to public use after the District's canal had been constructed, to-wit: Mile One North (No. 6) and Bentsen Drive (No. 7), and in awarding judgment in favor of the County and against the District for monies expended by the County in constructing bridges at those crossings.

■ The case appears to have been fully developed in all its essentials, and in accordance with the foregoing conclusions, and under the law as pronounced in the original opinion, the judgment of the trial court requiring the District by writ of mandamus to complete and maintain bridges Nos. 6 and 7, and awarding a money judgment in favor of the County and against the District, will be reversed and in those respects judgment will be here rendered that the County take nothing and that the writ of mandamus be denied; but the judgment will be affirmed insofar as it awards writ of mandamus requiring the District and its officers to build and maintain a bridge at the Goodwin East Line Crossing, and repair and hereafter maintain the bridges at crossings 1, 2, 3, 4 and 5.

Affirmed in part and reversed and rendered in part.