Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
WARD COUNTY IRRIGATION DISTRICT    )
NO. 1, WARD COUNTY IRRIGATION           )
DISTRICT NO. 3, and REEVES COUNTY       ) 
WATER IMPROVEMENT DISTRICT NO. 2, )                No. 08-04-00322-CV
)
                                    Appellants,                       )                             Appeal from
)
v.                                                                          )                  143rd District Court
)
RED BLUFF WATER POWER CONTROL      )                  of Ward County, Texas
DISTRICT,                                                          )
                                                                             )(TC# 04-05-20749-CVW)
                                    Appellee.                          )

O P I N I O N

            Ward County Irrigation District No. 1 (Ward District 1), Ward County Irrigation District No.
3 (Ward District 3), and Reeves County Water Improvement District No. 2 (Reeves District 2)
appeal from a judgment declaring that the two irrigation districts, following their conversion from
water improvement districts, are no longer members of the Red Bluff Water Power Control District
(Red Bluff District), and therefore, are not entitled to elect a director to serve on the Red Bluff
District’s board of directors. We reverse and render.
FACTUAL AND PROCEDURAL SUMMARY
            In 1933, the Legislature enacted Articles 7807d and 7807dd which provided for the
organization and government of water improvement districts and water power control districts.


 
Ward District 1, Ward District 3, Reeves District 2, and four other water improvement districts have
been member districts or divisions of the Red Bluff District since 1934 when the latter became a
water power control district and obtained authority to construct and maintain the Red Bluff Dam and
Reservoir on the Pecos River. Since the Red Bluff Dam was constructed, a primary function of the
Red Bluff District and its seven divisions has been to supply irrigation water to landowners for
agricultural purposes. As required by Article 7807d, the Red Bluff District entered into a master
contract with its member divisions in 1934. The master contract specifies the rights and obligations
of the parties and establishes each division’s pro rata interest in the Red Bluff District and the water
to be distributed. 
            Each of the seven divisions is governed by its own board of directors elected from the
district. The Red Bluff District is also governed by a board of directors with one director elected
from each division. In elections conducted in water improvement districts and water power control
districts, voter qualification is based upon residency in the district. In 2001 and 2003, respectively,
Ward District 1 and Ward District 3 converted from water improvement districts operating under
Chapter 55 of the Water Code to limited purpose irrigation districts operating under Chapter 58 of
the Texas Water Code.


 Both Ward District 1 and Ward District 3 expressly reserved their powers
under Texas Water Code Sections 55.165 (pertaining to drainage ditches and levees) and 55.193
(pertaining to selling water rights) so that they could continue to function in harmony within the Red
Bluff District. As a result of the conversion, voter qualification in elections conducted by the
irrigation districts is now based upon land ownership as specified in Section 58.022 of the Water
Code.
            An election for the Red Bluff District board of directors was scheduled to be held on May 15,
2004 in Ward District 1 and Ward District 3. Because Tom Nance (Ward District 1) and Ava Gerke 
(Ward District 3) were unopposed, the election was canceled and the two candidates were declared
to be the elected directors of their respective districts. The Red Bluff District, however, refused to
seat them on the board of directors.


 
            The Red Bluff District subsequently filed suit seeking a declaratory judgment that Ward
District 1 and Ward District 3 were no longer members of the Red Bluff District, and therefore, were
not entitled to have directors on the Red Bluff District board of directors. Ward District 1 and Ward
District 3 answered and counterclaimed for declaratory and injunctive relief. Reeves District 2 filed
a petition in intervention in support of the Ward districts. 
            Following a bench trial, the court entered judgment in favor of the Red Bluff District
declaring that: (1) Ward District 1 and Ward District 3 are no longer members of the Red Bluff
District and are not entitled to elect from their districts a member to the Red Bluff board of directors;
(2) the judgment does not abrogate the contractual rights and obligations of the Ward District under
the master contract; and (3) the judgment does not abrogate the rights of the Ward Districts to
receive funds from the Pecos River Compact account.


 The trial court found against the Ward and
Reeves Districts on their claims for affirmative relief and awarded attorney’s fees to the Red Bluff
District. At the request of the parties, the trial court entered findings of fact and conclusions of law. 
Among other things, the court concluded that its judgment did not disenfranchise any qualified voter
residents within the Red Bluff District boundaries because these voters may vote in the nearest
division to their residence. The Ward and Reeves Districts filed notices of appeal.
STATUS OF THE WARD DISTRICTS
            Raising multiple issues, all three Appellants challenge the trial court’s conclusion that the
conversion of Ward District 1 and Ward District 3 from water improvement districts to irrigation
districts disqualifies them as organized divisions of the Red Bluff District entitled to elect a director
to serve on Red Bluff’s board of directors. Appellants argue that Articles 7807d and 7807dd must
be considered in light of and harmonized with subsequent changes in law, including the enactment
of Section 58.038 which permits a water improvement district to convert to a Chapter 58 irrigation
district. According to Appellants, these changes in the law since 1933 indicate that application of
Article 7807d must not be restricted to water improvement districts. As the facts are undisputed, this
issue turns on the construction of Articles 7807d and 7807dd and various provisions of the Water
Code.
Standard of Review
            Statutory construction is a question of law which we review de novo. Texas Department of
Transportation v. Needham, 82 S.W.3d 314, 318 (Tex. 2002). In interpreting a statute, a court must
diligently attempt to ascertain legislative intent and must keep in mind the old law, the evil, and the
remedy. Tex.Gov’t Code Ann. § 312.005 (Vernon 2005). Further, we must interpret the statute
in a manner that gives effect to the plain meaning of the statute’s words and effectuates the
Legislature’s intent. State v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002). Legislative intent should
be determined by reading the language used and construing the statute in its entirety. See In re Bay
Area Citizens Against Lawsuit Abuse, 982 S.W.2d 371, 380 (Tex. 1998); Taylor v. Firemen’s &
Policemen’s Civil Service Commission, 616 S.W.2d 187, 190 (Tex. 1981). We should read every
word, phrase, and expression as if it were deliberately chosen, and presume that words excluded
from the statute were excluded purposefully. Gables Realty Ltd. Partnership v. Travis Central
Appraisal District, 81 S.W.3d 869, 873 (Tex.App.--Austin 2002, pet. denied). We must also
presume that: (1) compliance with the state and federal constitutions is intended; (2) the entire
statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of
execution is intended; and (5) public interest is favored over any private interest. Tex.Gov’t Code
Ann. § 311.021. Regardless of whether the statute is ambiguous, we may consider, among other
matters, the object the statute seeks to obtain, the circumstances under which the statute was enacted,
legislative history, common law or former statutory provisions, including laws on the same or similar
subjects, and the consequences of a particular construction. Tex.Gov’t Code Ann. § 311.023. 
Additionally, the court must consider “the consequences that would follow” from its construction
of a statute and avoid absurd results. Sharp v. House of Lloyd, Inc., 815 S.W.2d 245, 249 (Tex.
1991). Finally, we presume that the Legislature enacted a statute with complete knowledge of the
existing law and with reference to it. Acker v. Texas Water Commission, 790 S.W.2d 299, 301 (Tex.
1990). 
Historical Background
            A review of the historical background of Texas law enacted to encourage irrigation in the arid
parts of the state is helpful to our analysis of Articles 7807d and 7807dd. In 1889, the Legislature
enacted the first law to encourage irrigation and provide for the acquisition of the right to the use of
water in the arid parts of the state. See Act of March 19, 1889, 21st Leg., ch. 88, 1889
Tex.Gen.Laws 100. That Act declared that the unappropriated waters of every river or natural
stream within the arid portions of the state are the property of the public and may be acquired for
irrigation, domestic and other beneficial uses. Id. It provided for the construction and maintenance
of canals, ditches, reservoirs, and wells for irrigation by corporations formed and chartered under the
Act. Id. Corporations so created could acquire land and borrow money for the construction,
maintenance, and operation of its canals, ditches, flumes, feeders, reservoirs, and wells, and could
issue bonds and mortgage its corporate property to secure the payment of any debt contracted for
these purposes. Id.
            In 1904, the citizens of Texas approved a constitutional amendment which authorized any
political division or defined district to authorize, by a two-thirds vote, the issuance of bonds, the levy
and collection of taxes to pay the interest thereon, and to provide a sinking fund for the bonds’
redemption. Tex.Const. art. 3, § 52(b). The bonds could be issued for (1) the improvement of
rivers, creeks, and streams to prevent overflows, and to permit navigation or irrigation; and (2) the
construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the
purposes of irrigation, drainage or navigation. Id. The amount of bonds issued by the district could
not exceed one-fourth of the assessed valuation of real property within the district. Id. Pursuant to
Article 3, § 52(b), the Legislature in 1905 enacted legislation authorizing the creation of public
irrigation districts. See Acts of 1905, 29th Leg., R.S., ch. 122, 1905 Tex.Gen.Laws 235; see also
Hidalgo County Water Control & Improvement District No. 1 v. Hidalgo County, 134 S.W.2d 464,
467 (Tex.Civ.App.--San Antonio 1939, writ ref’d).
            In 1913, the Legislature repealed the 1905 law and enacted a new law pertaining to irrigation
districts. See Acts of 1913, 33rd Leg., R.S., ch. 172, 1913 Tex.Gen.Laws 380; Acts of 1913, 33rd
Leg., R.S., ch. 172, § 105, 1913 Tex.Gen.Laws 408. Just four years later, the Legislature repealed
the 1913 law and replaced it with a new law pertaining to water improvement districts. Act of March
19, 1917, 35th Leg., R.S., ch. 87, 1917 Tex.Gen.Laws 172; Act of March 19, 1917, 35th Leg., R.S.,
ch. 87, § 107, 1917 Tex.Gen.Laws 206; see Hidalgo County Water Control & Improvement
District, 134 S.W.2d at 467. Irrigation districts organized under the former law, such as Ward
County Irrigation District No. 1, were declared to be valid but would operate under the new law
applicable to water improvement districts.
            During this same legislative session, it was recognized that the restrictions imposed by
Article 3, § 52(b) on the amount of indebtedness had the effect of restricting irrigation development
rather than encouraging it. See Tex.Const. art. 3, § 52(b), Interpretive Commentary. Thus,
Article 16, § 59, also known as the Conservation Amendment, was added to the constitution
allowing the creation of conservation and reclamation districts as governmental agencies with the
power to incur such debts as might be necessary. Id. At a called session of the same Legislature,
two acts were passed for the purpose of effectuating the Conservation Amendment: the Canales Act



and the Laney Act.


 The Canales Act provided for the creation of conservation and reclamation
districts with the powers of water improvement districts and it authorized existing water
improvement districts and irrigation districts to convert to a conservation and reclamation district
with the benefits of the Conservation Amendment without a change of name.
            In 1925, the Legislature enacted new legislation providing for the organization of water
control and improvement districts under and in accordance with the provisions of Article 3, § 52 or
Article 16, § 59. See Acts 1925, 39th Leg., R.S., ch. 25, 1925 Tex.Gen.Laws 86 (Tex.Rev.Civ.Stat.
art. 7880-1 et seq. and later codified in Chapter 51 of the Texas Water Code).


 This legislation 
permitted the conversion of any existing water improvement district or irrigation district to a water
control and improvement district.


 See Acts 1925, 39th Leg., R.S., ch. 25, § 143, 1925
Tex.Gen.Laws 132. 
            The Red Bluff District was initially created in 1928 as a water improvement district covering
portions of Reeves, Ward, Loving, and Pecos Counties. It embraced within its boundaries seven
water improvement districts: (1) Loving County Water Improvement District No. 1; (2) Reeves
County Water Improvement District No. 2; (3) Ward County Water Improvement District No. 3; (4)
Ward County Irrigation District No. 1;


 (5) Ward County Water Improvement District No. 2; (6)
Pecos County Water Improvement District No. 2; and (7) Pecos County Water Improvement District
No. 3. 
            In the mid-1920’s, the federal government approved a plan to construct a dam and reservoir
on the Pecos River. Before the federal government would provide financing for the Red Bluff Dam
project, the Public Works Administration insisted that a master district be created with authority over
the seven water improvement districts. Thus, in 1933, the Legislature enacted Articles 7807d and
7807dd, which provided for the organization, reorganization, operation and government of water
improvement districts and water power control districts. Pursuant to Article 7807d, the Red Bluff
District converted from a water improvement district to a water power control district with authority
to construct and maintain the Red Bluff Dam.


 The seven water improvement districts within the
boundaries of the Red Bluff District became its members and they operated under the law applicable
to water improvement districts. 
                                                             Chapters 55 and 58
            Much of the law pertaining to organized water districts has been codified, and it includes
several types of general law districts:
            •          water control and improvement districts (Chapter 51);
            •          underground water conservation districts (Chapter 52);
            •          fresh water supply districts (Chapter 53);
            •          water improvement districts (Chapter 55);
            •          drainage districts (Chapter 56);
            •          levee improvement districts (Chapter 57);
            •          irrigation districts (Chapter 58);
            •          regional districts for water, sanitary sewer, drainage, and municipal solid waste
disposal (Chapter 59); and
 
            •          navigation districts (Chapters 60-63).
Water improvement districts are governed by Chapter 55 of the Water Code. See Tex.Water Code
Ann. § 55.021 (Vernon 2002). Irrigation districts created under the laws of 1905, 1913, and 1915
are governed by this same chapter. Tex.Water Code Ann. § 55.050.


 A water improvement
district may provide for irrigation of the land within its boundaries, and a district operating under
Article 16, § 59 may furnish water for domestic, power, and commercial purposes. Tex.Water
Code Ann. § 55.161(a), (b). A district may be formed to cooperate with the United States under
federal reclamation laws for the purpose of (1) construction of irrigation and drainage facilities
necessary to maintain the irrigability of the land; (2) purchase, extension, operation, or maintenance
of constructed facilities; or (3) assumption, as principal or guarantor, of indebtedness to the United
States on account of district lands. Tex.Water Code Ann. § 55.161(c). A water improvement
district may purchase or construct improvements and facilities necessary for irrigation of land in the
district, and if operating under Article 16, § 59, improvements and facilities necessary to supply,
deliver, and sell water for domestic, power, and commercial purposes. Tex.Water Code Ann.
§ 55.163.
            The Legislature enacted Chapter 58 in 1977 to provide for the creation of irrigation districts
under and subject to authority, conditions, and restrictions of either Article 3, § 52 or Article 16, §
59. Tex.Water Code Ann. § 58.011 (Vernon 2004). Irrigation districts operating under Chapter
58 are limited purpose districts established primarily to deliver untreated water for irrigation and to
provide for the drainage of lands and such other functions as are incidental to the accomplishment
of these limited purposes. Tex.Water Code Ann. § 58.121. Any water improvement district
(Chapter 55) or water control and improvement district (Chapter 51) which furnishes water for
irrigation and does not furnish treated water or sewer services may be converted into a district
operating under Chapter 58. Tex.Water Code Ann. § 58.038. A district that converts into an
irrigation district has all powers, authority, functions, and privileges provided in Chapter 58 in the
same manner and to the same extent as if the district had been created by that chapter. Tex.Water
Code Ann. § 58.041. Significantly, a district which converts to an irrigation district under Section
58.038 may continue to exercise all necessary powers under any specific conditions provided by the
chapter under which the district was operating before conversion, except it may not continue to
engage in the treatment or delivery of treated water for domestic consumption or the construction,
maintenance, or operation of sewage facilities. Tex.Water Code Ann. § 58.042(a). In order to
continue to reserve its powers under Section 58.042(a), the governing body of the district must
specify in the conversion order the specific statutory provisions which are to be preserved and made
applicable to the operations of the district after conversion. Tex.Water Code Ann. § 58.042(b). 
It is undisputed that the Ward Districts complied with the requirements of Chapter 58 when they
converted from water improvement districts to irrigation districts and their conversion orders
specified their reserved powers.
Public Policy and Legislative Intent
            It is the public policy of the state to provide for the conservation and development of the
state’s natural resources, including (1) the control, storage, preservation, and distribution of the
state’s water resources for irrigation, power, and other useful purposes, and (2) the reclamation and
irrigation of the state’s arid, semiarid, and other land needing irrigation. See Tex.Water Code
Ann. § 1.003 (public policy). Consistent with this policy, Texas water law has continuously evolved
to meet the changing needs of the state, including the arid and semi-arid regions. Since the
enactment of Articles 7807d and 7807dd, the Legislature has authorized the creation of many types
of water districts, including Chapter 58 irrigation districts. By statutory enactment, the Legislature
has insured that each district has the functions, powers, authority, rights, and duties that will permit
accomplishment of the purposes for which it was created or the purposes authorized by the
constitution, the Water Code, or any other law. See Tex.Water Code Ann. § 49.211(a)(Vernon
Supp. 2004-05)(powers and duties of general law districts); Tex.Water Code Ann. § 58.122
(powers and duties of irrigation districts). In an obvious effort to be responsive to changes in the
various districts, the Legislature has permitted the conversion of one type of water district to another,
and has allowed the converting district to retain its former powers. Taking a restrictive approach to
Articles 7807d and 7807dd is inconsistent with these expressions of legislative intent.
            At the time Articles 7807d and 7807dd were enacted, there existed only two types of districts:
water improvement districts, including those that had been initially created as irrigation districts
under the prior law, and water control and improvement districts created pursuant to the 1925 law. 
Significant to the trial court’s analysis, the Legislature initially included water control and
improvement districts as a type of organized water district which could become a division of a water 
power control district, but it amended the statute during the first called session to omit water control
and improvement districts from the purview of Article 7807d. Red Bluff District argues, as it did
in the trial court, that this change in the statute reflects a legislative intent to restrict membership in
water power control districts to water improvement districts. This is certainly one view of the
change, but Appellants urge an alternative interpretation. Rather than evidencing an intent to forever
restrict application of Article 7807d to water improvement districts, it is equally possible that the
Legislature intended only to exclude the more powerful water control and improvement districts
from inclusion in the water power control district. Given the overall approach by the Legislature to
water law, the latter interpretation is the more reasonable one. 
Powers of Water Improvement Districts
and Chapter 58 Irrigation Districts
 
            The trial court also concluded that application of Articles 7807d and 7807dd must be
restricted to water improvement districts because these districts have greater powers than the limited
purpose irrigation districts. By statutory enactment, the Legislature has insured that both water
improvement districts and irrigation districts have all functions, powers, authority, rights, and duties
that will permit accomplishment of the purposes for which the district was created or the purposes
authorized by the constitution, the Water Code, or any other law. See Tex.Water Code Ann. §
49.211(a)(powers and duties of general law districts). A similar provision is included in Chapter 58: 
The district has the functions, powers, authority, rights, and duties which will permit
the accomplishment of the purposes for which it was created, including the
investigation and, in case a plan for improvements is adopted, the construction,
maintenance, and operation of necessary improvements, plants, works, and facilities,
and the acquisition of water rights and all other properties, land, tenements, materials,
borrow and waste ground, easements, rights-of-way, and everything considered
necessary, incident, or helpful to accomplish by any practicable mechanical means
any one or more of the objects authorized for the district, subject only to the
restrictions imposed by the Constitutions of Texas or the United States. A district
also may acquire property deemed necessary for the extension or enlargement of the
plant, works, improvements, or service of the district.

Tex.Water Code Ann. § 58.122.

            As we have already noted, Section 58.042 permits a water improvement district, after
conversion to an irrigation district, to continue to exercise “all necessary specific powers under any
specific conditions” provided by Chapter 55 under which the district was operating before
conversion. Both Ward District 1 and Ward District 3 retained specific powers under Chapter 55
so that they could remain functional member divisions of the Red Bluff District. There is no
meaningful difference in powers between the Ward Districts following their conversion to Chapter
58 irrigation districts, and therefore, no practical reason to restrict the application of Articles 7807d
and 7807dd to water improvement districts.
Election Procedures
            The trial court determined that Chapter 58 irrigation districts cannot be members of the Red
Bluff District because Chapter 58 provides for a different election procedure. All water districts are
governed by a board of directors with the number of directors established by the specific law
applicable to the district. Tex.Water Code Ann. § 49.051 (Vernon 2000). Unless otherwise
provided by law, the elections are conducted in accordance with the Election Code. Tex.Water
Code Ann. § 49.101; see Article 7807d, § 9 (providing that all elections for directors of water power
control districts to be held within each division must be done in accordance with the provisions of
law providing for holding of elections within water improvement districts, and where consistent,
with general election law). Except as otherwise provided by law, to be eligible to vote in an election,
a person must:
            •          be a qualified voter as defined by Section 11.002 on the day the person offers to vote;
 
•be a resident of the territory covered by the election for the office or measure
on which the person desires to vote; and
 
•satisfy all other requirements for voting prescribed by law for the particular
election.

Tex.Election Code Ann. § 11.001.
            Chapter 58 irrigation districts are distinct, however, because eligibility to vote in elections
conducted by the district is based on ownership of irrigable land. Section 58.222 provides:
Notwithstanding the Election Code and any other law, a landowner or the
landowner’s registered representative under this subchapter is entitled to one vote in
an election conducted by a district only if the landowner:
 
(1) owns at least one acre of irrigable land located within the
district’s boundaries that is subject to an assessment for maintenance
and operating expenses under Section 58.305(a) and (b);
 
(2) is entitled to receive and use irrigation water delivered by the
district through the district’s irrigation facilities; and
 
(3) satisfies all other requirements for voting prescribed by this
subchapter.

Tex.Water Code Ann. § 58.222.
            Ordinarily, property ownership is not a valid qualification for voting because it is an
unconstitutional denial of equal protection. See Hill v. Stone, 421 U.S. 289, 95 S.Ct. 1637, 44
L.Ed.2d 172 (1975); Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970),
Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Kramer v. Union
Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). But there is an exception
to this rule. In Salyer Land Co. v. Tulare Lake Basin Water Storage District, 410 U.S. 719, 93 S.Ct.
1224, 35 L.Ed.2d 659 (1973), the United States Supreme Court considered whether a California
statute which limited the vote for the board of directors of a water storage district to district
landowners violated the equal protection clause. The water district existed for the purpose of storage
and distribution of irrigation waters to farms within the district and provided no other general public
services. Its costs were assessed against land in proportion to the benefits received. The Court
concluded that the statute did not violate the equal protection clause because of the special limited
purpose of district and the water district election was of sufficient “special interest” to the taxpaying
landowners that the franchise could constitutionally be denied to others. Id., 410 U.S. at 728, 93
S.Ct. at 1229. Because irrigation districts are limited purpose districts, and presumably would have
a disproportionate effect on landowners, it appears that the Salyer exception would apply.
            Appellants argue that this difference in voter eligibility is irrelevant to our analysis of Articles
7807d and 7807dd because Section 58.222 only applies to elections of the irrigation district’s own
board of directors and does not apply to the election of an irrigation district’s director serving on the
Red Bluff District board of directors. We agree. The board of directors of Ward District 1 and Ward
District 3 are elected according to the procedures prescribed by Chapter 58, but the election for the
Red Bluff District board of directors is conducted in accordance with Article 7807d and Chapter 55
of the Water Code. Article 7807d, § 9 provides that all elections for the directors of a water power
control district are conducted in accordance with general election law and the provisions of law for
water improvement districts. Therefore, voter qualification in the Red Bluff District board of
directors elections is based on residency as established by Section 11.001 of the Election Code. A
conflict is not created by permitting Chapter 58 irrigation districts to be a member division of the
Red Bluff District.
            We therefore hold that Ward District 1 and Ward District 3 are not disqualified from
membership in the Red Bluff District. Issue One raised by Ward District 1 and Ward District 3 is
sustained. Likewise, we sustain Issues A, B, D, and E raised by Reeves District 2. We reverse the
judgment of the trial court and render a declaratory judgment that: (1) Ward District 1 and Ward
District 3, despite their conversion to Chapter 58 irrigation districts, are organized districts within
and member divisions of the Red Bluff District; (2) Ward District 1 and Ward District 3 are each
entitled to have their elected director serve on the board of directors for the Red Bluff District; (3) 
Tom Nance and Ava Gerke shall be seated on the Red Bluff District to serve their terms; (4) Ward
District 1 and Ward District 3 are awarded reasonable attorney’s fees in the sum of $22,075; and (5)
Reeves District 2 is awarded reasonable attorney’s fees in the sum of $17,500. 


June 30, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.